**IOWA SUPREME COURT BOARD OF PROFESSIONAL ETHICS AND CONDUCT, Complainant,**

v.

**Trinidad J. LEON, Respondent.**

No. 99–1087.

Supreme Court of Iowa.

Nov. 17, 1999.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Trinidad J. Leon, Clear Lake, pro se.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

LAVORATO, Justice.

The Iowa Supreme Court Board of Professional Ethics and Conduct alleged that attorney Trinidad J. Leon neglected clients' legal matters, misappropriated client trust funds, misrepresented to his clients the status of their cases, and failed to respond to the board's inquiry about a complaint regarding these matters. Our grievance commission concluded that Leon committed the alleged violations and recommended that he be suspended for one year. The commission also recommended that as a condition of reinstatement Leon be required to apologize to the chief judge of the district in which Leon practices for his untruthful response to the judge's inquiry about a complaint of neglect from a client. We find serious breaches of professional ethics that demand revocation.

Leon has not appealed from the commission's recommendation. Nevertheless, we review the record de novo. Ct. R. 118.10. We give respectful consideration to the commission's recommendation; however, we ultimately determine what discipline is appropriate under the unique facts of each case. *Id.; Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland,*

577 N.W.2d 50, 52 (Iowa 1998). The board must prove the alleged ethical violations by a convincing preponderance of the evidence, a burden of proof that is greater than in a civil case but less than in a criminal case. *Apland,* 577 N.W.2d at 52.

## I. Facts and Proceedings.

The facts are undisputed. Leon has been in practice since 1992. At the time of the events giving rise to these proceedings, he was one of three partners in a Davenport law firm. Joyce Culver hired Leon to recover delinquent child support from her former husband, which Leon was unable to do. Unaware of this failure, Culver made repeated inquiries about the status of her case. Instead of telling Culver the truth, Leon simply wrote a check to Culver for $3769 on the firm's trust account. There were no funds belonging to Culver in the trust account to cover this amount. He did this on December 19, 1997. Leon wrote Culver another check for $1500 on the firm's trust account on August 20, 1998. Culver had no funds in the account to cover this check.

Kent Klemme hired Leon to negotiate a settlement with the child support recovery unit. Leon was not able to negotiate a favorable settlement. As a result, Klemme was left with a back child support obligation of $2300 and was facing incarceration unless he paid it. Instead of telling Klemme the truth, Leon wrote a check on the firm's trust account for $2300 to the child support recovery unit. Klemme had no funds in the trust account to cover the check.

Mary Hyslop purchased a house. Following the purchase, a soil stack leaked, causing damage to the house. Hyslop asked Leon to pursue a claim against the sellers for allegedly falsifying a disclosure statement about the condition of the house. Leon neglected to pursue the claim. Instead, he wrote a check to Hyslop on the firm's trust account for $1000. Hyslop had no funds in the trust account to cover the check. Leon told Hyslop that he had received a partial payment on a judgment he had obtained, and she would be receiving more from the clerk's office on the judgment.

Later, Hyslop went to the Scott County Clerk's office and demanded the remainder of the money she thought she had coming. The clerk referred her to Chief Judge John Nahra. Hyslop told Judge Nahra that Leon represented her and that Leon had told her that (1) there was a garnishment, (2) the clerk's office had the money, and (3) the clerk's office would not release the money. The judge talked to Leon about his conversation with Hyslop. Instead of telling the judge the truth, Leon left him with the impression that all was well between Hyslop and Leon.

Leon tried a dissolution action for Tom Anderson. The decree awarded Anderson personal property that was in the possession of his former wife. The former wife would not turn the property items over to Anderson. Anderson asked Leon to get the items or their value. Rather than to perform the necessary work to obtain the personal property, Leon wrote a check on the firm's trust account to Anderson for $250, the value of the property. At the time Leon wrote the check, Anderson had only about fifteen dollars in the trust account. Leon led Anderson to believe that he had filed a contempt action against the former wife and had obtained the $250 in that action.

Leon's partners were completely unaware of these transactions until Judge Nahra talked to one of the partners about his conversation with Hyslop. Leon apparently convinced the partner that there was nothing to the allegations Hyslop made to Judge Nahra.

Several days later the truth came out when the firm's accountant made the partner aware of a shortage in the firm's trust account because of the checks Leon had written. The partner questioned the firm's bookkeeper about the shortage. The bookkeeper handed the partner a list

of the checks that Leon had written. (According to Leon, he told the bookkeeper not to divulge that he had written the checks because he would "take care of it.") The partner confronted Leon about the checks, and Leon freely admitted what he had done. Leon asked for some time to make up the shortage.

Leon reimbursed the trust account in the amount of $3000, approximately $6000 less than the total shortage. The firm provided the balance of the shortage, with the exception of $595, a sum one of the partners personally provided. Shortly thereafter, the other two partners ended their partnership with Leon.

The partner who had confronted Leon about the trust account shortages filed a complaint with the board detailing the foregoing facts. The board sent a notice of the complaint to Leon, who failed to respond. Leon also failed to respond to a second notice.

Thereafter, the board filed a complaint against Leon. The complaint alleged that Leon's conduct in the Culver, Klemme, Hyslop, and Anderson matters violated Iowa Code of Professional Responsibility for Lawyers DR 1–102(A)(3) (lawyer shall not engage in conduct involving moral turpitude); (4) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); (5) (lawyer shall not engage in conduct that is prejudicial to the administration of justice); (6) (lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law); DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter); DR 9–102(A) (lawyer shall maintain client's funds in trust account).

Leon appeared and testified at the hearing on the complaint. When asked why he did not respond to the board's requests for admissions, he replied that everything in the request was accurate. Leon freely admitted he was guilty of all the ethical violations the board had alleged. His only explanation for writing the checks was that he was derelict in his duties to the clients

and he felt an obligation to "make it right" with them.

The commission found that Leon had committed all of the ethical violations the board had alleged and recommended that we suspend Leon's license to practice law for an indefinite period with no possibility of reinstatement for one year. The commission also recommended that as a condition of reinstatement Leon be required to personally apologize to Judge Nahra for his untruthful explanation to the judge about Hyslop's allegations.

## II. Discipline.

We too find that Leon committed all of the ethical violations that the board had alleged. Our next task is to determine the appropriate discipline.

This is not a case involving an isolated incident of unethical conduct. Rather, it involves a lawyer who was intentionally and repeatedly dishonest with his law partners, a district court judge, and most relevantly, his clients. Leon neglected his clients' legal matters and lied about the status of their cases. He repeatedly misappropriated client funds in an effort to "cover up" the fact that he was neglectful. Even after these matters were brought to light, he ignored, on two occasions, inquiries from the board about these matters.

Given the collective seriousness of Leon's ethical violations, we have no hesitancy in saying that the commission's recommended sanction is inadequate. On several occasions, we have made it clear that misappropriation of client funds routinely demands revocation. See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen, 586. N.W.2d 383, 389–90 (Iowa 1998) (collecting cases in which this court has revoked licenses for misappropriation of client funds). Leon's misappropriation of client funds alone would therefore usually move us to revoke his license.

There is, however, precedent for a less severe sanction even when the lawyer has

misappropriated client funds. *See, e.g., Allen,* 586 N.W.2d at 391 (one-year suspension for taking unauthorized fees and misappropriating funds from conservatorship; ward died during the conservatorship and lawyer and sister were sole beneficiaries of ward's will; lawyer did not attempt to cover up his misdeeds, and this court acknowledged the facts were unique); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk,* 553 N.W.2d 322, 325 (Iowa 1996) (one-year suspension for taking $1000 from trust account to pay office expenses; although attorney claimed there were probate fees in trust account totaling more than $1000 when he withdrew the funds, there were no court orders allowing the fees); *Committee on Prof'l Ethics & Conduct v. Harris,* 524 N.W.2d 179, 181 (Iowa 1994) (three-year suspension; one of the charges concerned the attorney's writing a client a check for $3000 on the lawyer's trust account when the client had only $670 in the account); *Committee on Prof'l Ethics & Conduct v. Rauch,* 486 N.W.2d 39, 40 (Iowa 1992) (one-year suspension for several ethical violations including lawyer's conversion for his personal use $5000 intended as a gift in trust for his son; lawyer ultimately repaid the money).

Of the four cases, *Harris* is closest to the facts here. Harris bungled a legal matter for his client. Rather than tell the client the truth, Harris paid the client from his own funds and represented that the money had been awarded by the court. When the same client complained because Harris withdrew from the firm's trust account funds belonging to the client for attorney fees, Harris wrote the client a $3000 check from the trust account. The client had only $670 in the trust account at the time. Harris also failed to give the client credit toward attorney fees for an expensive watch the client had turned over to Harris. Additionally, Harris failed to respond to the committee's inquiries.

Although we recognized that Harris' ethical violations ordinarily would merit revocation, we suspended his license for three years. We relied on several factors in doing so: these were Harris' first ethical violations and he had not converted funds for his own use. *Harris,* 524 N.W.2d at 181. Given Harris' past good conduct, we concluded his misconduct was out of character and not likely to reoccur. *Id.*

What distinguishes this case from *Harris* is Leon's pattern of misbehavior. Leon did not misappropriate funds on just one occasion; he did so on five separate occasions involving four separate clients. He misappropriated the funds to cover up four separate incidents of neglect. When confronted by his partner and a judge, he lied to further the cover-up. In addition, he failed to fully reimburse the trust account for the misappropriation. He then compounded these violations by ignoring the board's inquiries about these matters. Such a pattern of misconduct leads us to conclude that future misconduct is likely. We have a duty to protect the public and the courts from such conduct. Therefore, consistent with our prior decisions, we conclude revocation is the only sanction commensurate with Leon's admitted extreme wrongdoing.

We revoke Leon's license to practice law in this state.

Costs are assessed to Leon pursuant to Court Rule 118.22.

**LICENSE REVOKED.**