# IN THE SUPREME COURT OF IOWA

No. 08–1413

Filed June 5, 2009

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**VAN PLUMB,**

      Respondent.

---

On review of the report of the Grievance Commission.

Respondent appeals from a report of the Iowa Supreme Court Grievance Commission recommending respondent's license to practice law be suspended. **LICENSE SUSPENDED.**

Charles L. Harrington and David Grace, Des Moines, for complainant.

Alfredo Parrish of Parrish Kruidenier Dunn Boles Gribble Parrish Gentry & Fisher, L.L.P., Des Moines, for respondent.

**HECHT, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, Van Plumb, violated several ethical rules by divulging a client's secrets or confidences, neglecting clients' cases, attempting to persuade a client to withdraw an ethical complaint, failing to respond to a complaint filed by the board, failing to provide responses to the board's discovery requests, failing to provide clients with an accounting for unearned retainers, failing to deposit unearned fees in a trust account, engaging in dishonesty or misrepresentation in attempting to cover up his failure to file a civil action within the statute of limitations, and misappropriation of funds from a trust account. A division of the Grievance Commission of the Supreme Court of Iowa found Plumb violated numerous ethical rules and recommended we suspend his license to practice law for a period of twelve months. Plumb filed a notice of appeal from the commission's report. *See* Iowa Ct. R. 35.11(1). Having given respectful consideration to the commission's findings of fact, conclusions of law, and recommendation, we find the respondent violated numerous ethical rules. We therefore suspend his license to practice law indefinitely with no possibility of reinstatement for eighteen months.

## I. Scope and Standards of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.10(1). The board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 230 (Iowa 2006). "This burden is 'less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139,

142 (Iowa 2004)). We give weight to the commission's findings, especially when considering the credibility of witnesses, but we are not bound by those findings. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 695 (Iowa 2006). "Once misconduct is proven, we 'may impose a lesser or greater sanction than the discipline recommended by the grievance commission.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conrad*, 723 N.W.2d 791, 792 (Iowa 2006) (quoting *Lett*, 674 N.W.2d at 142).

## II. Factual Findings.

The board's complaint alleged Plumb committed ethical violations in the representation of four separate clients. We will address them seriatim in the same order they were addressed in the commission's findings, conclusions of law, and recommendation.

**A. McRae Matter.** Plumb represented McRae on a domestic abuse charge which was concluded with the entry of a deferred judgment. While subsequently representing a different party in contentious commercial litigation, Plumb deposed McRae who was listed as a witness by a party-opponent. Plumb posed questions during an August 14, 2002 deposition requesting McRae to disclose the nature of the criminal charge and the substance of certain statements made by McRae to Plumb in the course of their attorney-client relationship. Although McRae asserted the attorney-client privilege, Plumb persisted in the line of questioning. The board asserted Plumb's conduct during the deposition violated DR 4–101(B) (revealing confidences or secrets of client), DR 7–102(A)(1) (taking action on behalf of a client when it is obvious such action would serve merely to harass or maliciously injure

another), and DR 1–102(A)(1), (5), and (6) (violating a disciplinary rule).[1] The commission found Plumb's conduct during the deposition was properly characterized as overzealous, but not so egregious as to require a sanction. Plumb contends his questions did not reveal any secret or confidence imparted to him by McRae, and claims the questions posed during the deposition inquired only as to matters that were already of public record in McRae's criminal case.

A client's "secrets" includes information gained by an attorney in an attorney-client relationship that "would be embarrassing" or that would "be likely to be detrimental to the client." DR 4–101(A). Even if it was not already apparent to Plumb that McRae considered his domestic abuse history as a distinct embarrassment, this became clear to him when McRae declined to answer because he believed the questions inquired about a matter protected by the attorney-client privilege. Notwithstanding McRae's initial refusal on the ground of privilege to answer the question posed, Plumb persisted and expressly inquired as to the substance of a conversation he claimed to have had with McRae about the consequences of any plea bargain in the criminal case. We find Plumb's conduct during the deposition crossed the line of appropriate zealous representation in the commercial litigation, and constituted a revelation of a former client's secret in violation of DR 4–101(B)(1). We also find Plumb's conduct during the deposition constituted a violation of DR 1–102(A)(1) (violation of a disciplinary rule), DR 1–102(A)(5) (conduct prejudicial to the administration of justice), and DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law).

---

[1]Most of the conduct at issue in this case occurred prior to July 1, 2005. As to such conduct, the board charged Plumb with violation of rules then extant in the Iowa Code of Professional Responsibility for Lawyers. Where Plumb's conduct after July 1, 2005 forms the basis of claimed ethical violations, the board has alleged breach of rules stated in the Iowa Rules of Professional Conduct.

**B. Babcock Matter.** Plumb agreed to represent Babcock, who was incarcerated at the correctional facility in Newton, in a civil action for the sum of $3000. Plumb received the advance fee payment from Babcock, but did not deposit it in a trust account. Babcock later filed a complaint with the board after Plumb failed to respond to several written inquiries between March and October of 2004. Plumb notified Babcock of his intention to withdraw as counsel. Plumb and Babcock thereafter discussed the matter by telephone and reconciled their differences. Plumb drafted a letter for Babcock's signature withdrawing the complaint. The reconciliation was short-lived, however, for soon thereafter Babcock refiled the ethics complaint against Plumb, and requested an accounting and a refund of the unearned attorney fee. Plumb ignored for several months the request for an accounting. When the board requested information from Plumb about the complaint, he did not respond.

The board charged Plumb with neglecting Babcock's case in violation of DR 6–101(A)(3), improperly attempting to influence Babcock to withdraw the ethical complaint in violation of DR 1–102(A), failing to respond to the board's inquiry in violation of DR 1–102(A)(5), (6), failing to deposit unearned fees in a trust account in violation of DR 9–102(B), and failing to refund unearned fees in violation of DR 2–110(A)(3) and DR 9–102(B)(4).

We find the communication problems between Plumb and Babcock were attributable, at least in significant part, to the circumstances of Babcock's incarceration. Plumb communicated with Babcock for a time through a person holding Babcock's power of attorney. When the relationship between Babcock and the person holding that power broke down, Plumb began communicating with Babcock's mother. We find the

board failed to prove by a convincing preponderance of the evidence that Plumb breached ethical rules in failing to communicate with Babcock.

Babcock asserted, and the board claimed, that Plumb's neglect of Babcock's case led to the repossession of Babcock's vehicle and tardiness in providing responses to discovery requests propounded to Babcock. Although Plumb did fail to prevent the repossession of Babcock's vehicle, we find this was a consequence of Babcock's failure to make his monthly loan payments, and not the result of neglect on the part of Plumb. The delay of Babcock's responses to discovery was, in significant part, attributable to the uncertainties resulting from the filing of the ethical complaint and Plumb's motion to withdraw as Babcock's counsel. We find the board failed to prove Plumb's conduct in these particulars constituted neglect of Babcock's defense.

Although Plumb's drafting of Babcock's letter to the board requesting dismissal of the ethics complaint is a circumstance that provokes suspicion, we find persuasive Plumb's explanation that the letter to the board was drafted at Babcock's request after the telephonic reconciliation had occurred. Babcock conceded in his testimony that he did not feel pressured by Plumb to withdraw the complaint. Upon our de novo review, we find the board failed to prove Plumb's conduct constituted an improper attempt to dissuade Babcock from maintaining the ethics complaint or an effort to persuade Babcock from cooperating in the board's investigation of the matter.

Plumb concedes he failed to respond to the board's inquiry in this matter. We therefore find he violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice) and DR 1–102(A)(6) (conduct adversely reflecting on fitness to practice law). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009).

We have characterized advance fee payments as "special retainers." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 697 (Iowa 2008); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 55–57 (Iowa 1998). " '[F]ee advances are not earned when paid, and therefore *must* be deposited into the trust account.' " *Apland*, 577 N.W.2d at 55 (citation omitted) (emphasis added). Such "[f]unds remain the property of the client until the attorney earns them." *Id.*; *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 408 (Iowa 2005) ("all advance fee payments other than general retainer fee payments are refundable and must be placed in a client trust account").[2] We find Plumb violated DR 9–102(A) when he failed to deposit Babcock's $3000 advance fee payment in a trust account. When Babcock requested a refund of the unearned portion of the fee, Plumb failed for several months to do so. This failure to promptly refund the unearned portion of the advance fee constituted a violation of several rules including DR 9–102(B)(4) (lawyer's duty to promptly pay or deliver client's funds to client as requested).

**C. Nelson Matter.** Nelson was a party to a dissolution of marriage proceeding in Dickinson County. After becoming dissatisfied with his counsel, Nelson discharged him and requested other attorneys to undertake the representation. Two other attorneys declined Nelson's entreaties before Plumb agreed to handle the matter for a fee of $7500. Nelson paid that amount in two installments, but Plumb did not deposit either payment in a trust account. Soon after the professional

---

[2]These requirements are incorporated in the new Iowa Rules of Professional Conduct and the client trust account rules. *See* Iowa R. Prof'l Conduct 32:1.15(c) ("A lawyer shall deposit in a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."); Iowa Ct. R. 45.7(1), (3) (defining advance fees and requiring deposit of advance fee into the client trust account).

relationship commenced, Nelson requested Plumb to also represent him in a real estate dispute. Plumb agreed to handle this matter as well, and received from Nelson an advance fee payment of $750.

The attorney-client relationship between Plumb and Nelson soon soured. It was characterized by profound mutual dissatisfaction which ultimately led to its termination. Nelson claims he requested a refund of the unearned fees, but Plumb denies such a request was received. Following an investigation of Nelson's complaint, the board charged Plumb with violation of DR 9–102(B)(4) (failure to promptly refund the unearned portion of the fee when requested), DR 2–110(A)(3) (same), and DR 9–102 (failure to deposit unearned fees in a trust account). Plumb contended his failure to deposit Nelson's initial payment in a trust account was justified because he had already earned this sum, when it was paid, and claimed that he did account for the fees when the attorney-client relationship ended. Finding Nelson's testimony incredible, the commission resolved the factual disputes in Plumb's favor finding no ethical violations of counsel's duty to deposit unearned fees in a trust account, and no ethical violation of counsel's duty to account for unearned fees when requested to do so. Granting appropriate deference to the commission's credibility findings, we adopt the commission's findings as our own.

Like the commission, we find Plumb violated DR 1–102(A)(5) and (6) when he failed to respond to the board's requests for information pertaining to Nelson's complaint. Such conduct is prejudicial to the administration of justice, and it adversely reflects on Nelson's fitness to practice law. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rauch*, 746 N.W.2d 262, 265–66 (Iowa 2008).

**D. Mambu Matter.** Mambu was injured on March 7, 2002 in a motor vehicle crash. She communicated with the adjuster for the other driver's insurer on several occasions before she hired Plumb to represent her. After the applicable statute of limitations had expired, Plumb drafted and back-dated in Mambu's presence a letter to the insurer ostensibly proposing to extend the limitations period by six months. Plumb subsequently filed suit on the claim, but the case was dismissed as untimely. Mambu retained new counsel, filed a professional negligence action against Plumb, and filed an ethics complaint with the board.

Following negotiations with Mambu's new counsel, Plumb agreed to settle the malpractice claim for the sum of $7000. On August 22, 2005, Plumb drew a check on his trust account in that amount and forwarded it to Mambu's counsel in furtherance of the settlement.[3] Sensing an appearance of impropriety upon receipt of the check drawn on Plumb's trust account, Mambu's counsel returned it to Plumb. Plumb responded to the return of the settlement check with a strange series of bank transactions. He drew a new settlement check on his business account and delivered it to Mambu's counsel on September 2, 2005. To cover that check drawn on the business account, Plumb drew a check in the amount of $8500 payable to himself on the trust account and deposited it in the business account on that same day. At or about the same time, Plumb claims to have planned to cover the check drawn on the trust account by depositing a check in the same amount allegedly

---

[3]Plumb testified he drew the check on his trust account because he believed he was counsel for himself, and that use of the trust account for this purpose was required by the rule, and appropriate for preservation of a record of the settlement transaction. He did not explain why he thought a record of the transaction could not have been properly made using his business account.

drawn on his wife's account on September 1, 2005 and payable to Plumb. When the board's auditor subsequently appeared to examine Plumb's trust account, it was disclosed that the check drawn on Plumb's wife's account was not deposited in the trust account until sixty days after Plumb withdrew a corresponding amount from the trust account and deposited it in his business account. No client suffered a financial loss as a consequence of this series of trust account transactions.

The board charged Plumb with violations of DR 6–101(A)(3) (lawyer shall not neglect a client's legal matter), DR 1–102(A)(4) (conduct involving dishonesty or misrepresentation in attempting to conceal his negligence by back-dating a letter proposing an extension of the statute of limitations), DR 1–102(A)(1), (5), and (6) (violation of disciplinary rule; conduct prejudicial to the administration of justice; conduct adversely reflecting on fitness to practice), and rule 32:1.15 (duty to keep client's property separate). The commission found Plumb violated each of these rules. Upon our de novo review of the record, we agree. The evidence clearly establishes and we therefore find that Plumb neglected Mambu's legal matter and attempted through deceit and misrepresentation to conceal his negligence. We find the board also clearly proved Plumb's mishandling of his trust account in connection with the Mambu settlement transactions in violation of rule 32:1.15.

### III. Sanction.

The commission recommended Plumb's license to practice law be suspended with no possibility of reinstatement for a period of one year. As we have noted, however, we may impose a lesser or greater sanction than the discipline recommended by the grievance commission. *Conrad*, 723 N.W.2d at 792. In determining the appropriate sanction for attorney misconduct:

we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 164 (Iowa 2003).

Misappropriation of a client's funds by an attorney has, almost universally, resulted in license revocation. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Anderson,* 687 N.W.2d 587, 590 (Iowa 2004); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bell,* 650 N.W.2d 648, 655 (Iowa 2002); *Comm. on Prof'l Ethics & Conduct v. Ottesen,* 525 N.W.2d 865, 866 (Iowa 1994); *Comm. on Prof'l Ethics & Conduct v. Shepherd,* 431 N.W.2d 342, 344 (Iowa 1988). Exceptions to this longstanding rule have been noted in instances when the attorney had a colorable future claim to the funds or did not take the funds for his own use. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Allen,* 586 N.W.2d 383, 391 (Iowa 1998); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel,* 558 N.W.2d 186, 192 (Iowa 1997). Restitution or restoration of client funds prior to the discovery of their misappropriation does not preclude the imposition of revocation as a sanction. *Anderson,* 687 N.W.2d at 590. The sanction of revocation of the offending attorney's license has been imposed when the misappropriation was substantially smaller than $8500. *See Comm. on Prof'l Ethics & Conduct v. Rowe,* 225 N.W.2d 103, 104 (Iowa 1975) (license revoked for depositing $1500 of client's funds in attorney's personal checking account).

This case presents a very close question as to whether Plumb's license should be revoked for misappropriation of funds from a trust

account. He drew a check on the trust account and attempted to use it to pay the settlement of Mambu's tort claim. When this failed because Mambu's counsel objected, Plumb sought to avoid the appearance of impropriety by forwarding to counsel a new check drawn on his business account and "covering" it with a corresponding withdrawal from the trust account and deposit to the business account. When this apparent irregularity was to be discovered by the board's auditor, Plumb sought to cover his tracks by claiming the withdrawal of $8500 from the trust account would have been "covered"—but for his oversight—by a deposit to the trust account of a check in the same amount drawn on his wife's account.[4] We find this series of transactions and Plumb's explanation of them implausible at best. Nonetheless, we conclude the severe sanction of revocation should not be imposed in this case because Plumb had a colorable future claim to funds in the trust account in excess of $8500, the amount withdrawn in furtherance of the Mambu settlement. Plumb's uncontroverted testimony establishes he had earned, but had not yet withdrawn from the trust account on September 2, 2005, attorney fees in excess of $10,000. Accordingly, we now consider what sanction less than revocation should be imposed under the circumstances of this case.

When combined with incidents of misrepresentation, neglect of a client's legal matters will give rise to a lengthy suspension from the practice of law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth*, 656 N.W.2d 93, 100 (Iowa 2002). The multiple violations proved by the board in this case are aggravated by Plumb's substantial history of prior discipline. He has been publicly reprimanded on four previous

---

[4]The board presented credible evidence tending to establish there were insufficient funds in Plumb's wife's account on the day the check was allegedly drawn to cover the check which Plumb claims he intended, but neglected, to deposit in his trust account.

occasions, and his license was suspended in 1999 for sixty days for neglect of multiple client matters, failure to deposit an advance fee in a trust account, and failure to respond to the board's complaint. Plumb's conduct in the several matters that are the subject of this case leads us to conclude the sanctions imposed for his past ethical lapses have been inadequate to induce conformity with our ethics rules, and a significant period of suspension is required in this case.

**IV. Conclusion.**

Plumb's license to practice law in Iowa is suspended with no possibility of reinstatement for eighteen months. The suspension imposed applies to all facets of the practice of law as provided by Iowa Court Rule 35.12(3) and requires notification of clients as provided in Iowa Court Rule 35.21. Given the broad range of his ethical violations and his history of recidivism, Plumb shall take and pass the Multistate Professional Responsibility Examination prior to making an application for reinstatement of his license. Iowa Ct. R. 35.12(1). The costs of this proceeding are taxed against Plumb pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**

All justices concur except Appel, J., who takes no part.