# IN THE SUPREME COURT OF IOWA

No. 10–0195

Filed October 29, 2010

**IOWA SUPREME COURT**
**ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**PATRICIA K. WENGERT,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends a three-year suspension of attorney's license to practice law. **LICENSE REVOKED.**

Charles L. Harrington and David J. Grace, for complainant.

John P. Roehrick, Des Moines, for respondent.

**STREIT, Justice**.

Patricia Wengert practiced law in Iowa between 1990 and 2007. During that time, she committed numerous ethical violations, including representing clients notwithstanding a conflict of interest, disobeying a court order, mishandling client funds, and neglecting a client matter. Because Wengert misappropriated client funds, in addition to numerous other ethical violations, we revoke her license to practice law.

## I. Background Facts and Prior Proceedings.

Patricia Wengert was admitted to practice law in Iowa in 1990. She engaged in private practice in Sioux City and Des Moines until 2007, when she left the practice of law. Her license is on inactive status.

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint alleging nine counts of ethical violations committed by Wengert while practicing. Wengert and the board filed a stipulation setting forth agreed-upon facts and admitted violations of ethical rules under counts I, II, III, V, VI, VIII, and IX. The stipulation set forth mitigating and aggravating circumstances and recommended that Wengert be suspended from the practice of law for three years.

The Grievance Commission of the Iowa Supreme Court found that the admitted violations were supported by the agreed-upon facts. The commission also found additional ethical violations based on the stipulated facts for counts I, III, V, and VI. The commission recommended that Wengert's license to practice law be suspended with no possibility of reinstatement for a period of three years pursuant to Iowa Court Rule 35.10(2) and ordered that prior to reinstatement, Wengert must (1) provide proof that the $9,790.29 paid from the Marva

Edwards settlement to the Veda Kilbert[1] subrogation claim has been repaid to Ms. Edwards, (2) retake and successfully pass the Multistate Professional Responsibility Examination, and (3) complete and produce a comprehensive psychiatric and psychological evaluation. We hold the proper sanction is revocation because Wengert misappropriated client funds, in addition to other ethical violations.

**II. Scope of Review.**

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.10(1). Although we give weight to the commission's factual findings, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marzen*, 779 N.W.2d 757, 759 (Iowa 2010). The board has the burden to prove the allegations of misconduct contained in the complaint by a convincing preponderance of the evidence. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Evans*, 537 N.W.2d 783, 784 (Iowa 1995). While this burden is higher than the burden in civil cases, it is lower than in a criminal prosecution. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996).

**III. Ethical Violations.**

**A. Conflict of Interest (Count I).** In 2006, Wengert represented Mary Stenlund in an involuntary guardianship and conservatorship proceeding. During the course of the proceedings, the State of Iowa filed a criminal charge against Stenlund's daughter, Linda Wilson, for neglect of Stenlund. Wengert filed an appearance on Wilson's behalf. The district associate judge found a concurrent conflict of interest, disqualified Wengert from representing Wilson, and ordered Wengert not

---

[1]The commission mistakenly switched the names Kilbert and Edwards, stating that the Kilbert settlement was used to pay the Edwards subrogation claim. According to the stipulation, the Edwards settlement was used to pay the Kilbert subrogation claim.

to discuss the case with Wilson. Wengert admits she had contact with Wilson after Wilson was represented by another attorney. Wengert was found in contempt of the court's order on April 12, 2007, and received a seven-day suspended jail sentence.

Wengert stipulated to the violation of three rules of the Iowa Rules of Professional Conduct: rule 32:1.7(a) prohibiting concurrent conflicts of interest, rule 32:4.2 prohibiting an attorney from contacting an individual who is represented, and rule 32:8.4(d) prohibiting an attorney from engaging in conduct that is prejudicial to the administration of justice.

We agree the stipulated facts demonstrate Wengert violated these rules. Wengert's attempt to represent Stenlund in a guardianship and conservatorship proceeding and to simultaneously represent Wilson for alleged neglect of Stenlund was a clear conflict of interest that violates ethical rule 32:1.7(a). *See also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wagner,* 599 N.W.2d 721, 726 (Iowa 1999) (noting under the Iowa Code of Professional Responsibility for Lawyers that "the mere possibility of an adverse effect upon the exercise of free judgment prevents a lawyer from representing clients with opposing interests"). Wengert violated rule 32:4.2(a), which prohibits an attorney from "communicat[ing] about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter." Wengert admits she contacted Wilson and was held in contempt for violating an order not to discuss the case with Wilson.

Engaging in the clear conflict of interest and then disobeying a court order constitute conduct that is prejudicial to the administration of justice, a violation of rule 32:8.4(d). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford,* 625 N.W.2d 672, 682 (Iowa 2001) ("[W]hen

an attorney willfully disobeys an order or command of a court or the processes of a court, the administration of justice is prejudiced."). The commission also found a violation of rule 32:3.4(c), which prohibits an attorney from knowingly disobeying an obligation under the rules of a tribunal. We agree that the district court's order holding Wengert in contempt supports a violation of rule 32:3.4(c) as well.

**B.  Inappropriate Statements (Counts II and III).** Wengert stipulated to making a number of critical statements during court proceedings in two instances. First, Wengert stipulated that in 2006, following a hearing on a fee application after Wengert was removed as the attorney for an estate, Wengert made "unduly critical allegations concerning the probate process and the court." Wengert also stipulated that during the process of her representation of a client involved in a juvenile court proceeding in 2006, Wengert "suggested the process was racist; requested the judge's recusal because of lack of objectivity and violation of the mother's (client's) constitutional rights; and, accused the Department of Human Services of fraudulently misleading the court."

Wengert stipulated that she violated rule 32:8.4(d) prohibiting conduct prejudicial to the administration of justice in both instances. The commission also found Wengert violated rule 32:1.1 which requires an attorney to provide competent representation. The commission noted that Wengert's statements in the juvenile court proceeding would only be prejudicial to the administration of justice if false and making false statements during the course of a representation constitutes a failure to provide competent representation.

We are unable to find that Wengert violated any ethical rules relating to her allegedly inappropriate statements because the stipulation does not articulate the necessary underlying facts. Wengert admits only

to making "unduly critical" statements. We cannot simply assume, as the commission did, that because Wengert stipulated to an ethical violation, those statements must have been false. Instead, the underlying stipulation must provide the facts to support the ethical violation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 272 (Iowa 2010) (holding the commission's recommendation that the attorney be ordered to refund his clients' funds could not be enforced because the stipulation failed to detail the amount of such funds and no witness testimony or evidence was taken on the matter).

**C. Mishandling Client Funds (Counts V and VI).** Wengert mishandled client funds in two separate circumstances. First, Wengert represented Pamela Meals in a personal injury case. In August 2006, Meals wrote Wengert a check of $1,825 to pay for a medical examination. Wengert used the funds to pay herself for other expenses that she claims were advanced on behalf of Meals. Over a year later, Wengert used her personal funds to pay the cost of the medical examination.

In the second instance of mishandling client funds, Wengert represented three individuals (Veda Kilbert, Marva Edwards, and Daphine Hayes) in a case seeking recovery for injuries sustained in a work-related accident. All three cases settled. Wengert violated a variety of the rules governing appropriate conduct relating to client funds. First, Wengert advanced $175 to Kilbert. Second, Wengert improperly handled settlements obtained on behalf of her clients. Wengert received settlement funds in Kilbert's case in February 2006. Wengert did not use those funds to pay Kilbert's $9,790.29 subrogation obligation to St. Paul Travelers and used "those settlement funds for other purposes." Wengert then received the funds to settle Edwards's claim for $81,000 in June 2006. Wengert did not deposit the settlement proceeds in her trust

account and did not pay Edwards's subrogation obligation of $17,811.23 owed to St. Paul Travelers. Instead, Wengert used some of the Edwards settlement funds to pay Kilbert's $9,790.29 subrogation obligation. Wengert did not keep an accurate accounting for the Edwards settlement.[2] Wengert eventually paid off Edwards's subrogation obligation over a year later with her personal funds. As noted by the commission, it is unclear whether the money used to pay Kilbert's $9,790.29 subrogation obligation was repaid to Edwards.

During this time period—in April 2006—Wengert signed a Client Security questionnaire in which she asserted that her trust account was properly reconciled. An audit of Wengert's trust account demonstrated serious problems including: comingling of personal and trust funds, lack of records regarding which client funds were affected, and lack of reconciliations. The auditor found it was impossible to reconcile the account.

Wengert stipulated to violations of rules 32:1.15, 32:1.8(e), and 32:8.4(c). The commission also found violations of rule 32:8.4(d) and Iowa Court Rules 45.1 and 45.2(2). Wengert's failure to keep her client's funds separate from her own funds, failure to place client settlement funds into a trust account, and use of client settlement funds for "other purposes" and to pay the subrogation obligation of another client violated rule 32:1.15, which governs the safekeeping of a client's property. *See also Comm. on Prof'l Ethics & Conduct v. Harris*, 524 N.W.2d 179, 181 (Iowa 1994) (noting under the Iowa Code of Professional Responsibility for Lawyers that "paying the client from trust funds belonging to other

---

[2]Wengert claimed in her response to the complaint that the money used from the Edwards settlement was part of the attorney fee portion of the settlement, although this was not a stipulated fact. The stipulation states only that Wengert "used some of the Edwards recovery to pay the Kilbert subrogation obligation."

clients is a gravely serious ethical violation"). Wengert's failure to place settlement funds into her trust account and keep appropriate records violated client trust account rules 45.1 and 45.2(2). Wengert's false certification that her trust account was properly reconciled and her misappropriation of and failure to account for client settlement funds violated rule 32:8.4(c), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 109 (Iowa 2008) (holding attorney's false representations on client security questionnaire violated DR 1–102(A)(4) of the Iowa Code of Professional Responsibility, which prohibited conduct involving dishonesty, fraud, deceit, or misrepresentation); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman,* 729 N.W.2d 801, 804 (Iowa 2007) (holding attorney's failure to account for retainer fees violated DR 1–102(A)(4)).

The commission also found Wengert's mishandling of client funds violated rule 32:8.4(d) (engaging in conduct prejudicial to the administration of justice). We have explained that acts are prejudicial to the administration of justice when they " 'have hampered the "efficient and proper operation of the courts or of ancillary systems upon which the courts rely." ' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)). The stipulation does not provide sufficient facts to support a violation of 32:8.4(d) for Wengert's actions with regard to Meals. Wengert improperly used funds meant for a medical examination for other expenses. It is unclear based on the stipulated facts, however, whether the independent medical examination was ordered by a court and whether Wengert's actions delayed or hampered the court system.

We are also unable to find that Wengert's handling of the Kilbert and Edwards settlement funds violated rule 32:8.4(d). We have previously held that delay in the administration of settlement funds after a lawsuit had been filed, and therefore delay in the resolution of a client's pending lawsuit, violated rule 32:8.4(d). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 59 (Iowa 2009) (finding attorney's untimely disbursement of settlement proceeds, mishandling of subrogation lien, and failure to respond to client's complaints that the court costs and subrogation lien had not been paid constituted conduct prejudicial to the administration of justice under Iowa Code of Professional Responsibility DR 1–102(A)(5)). Although Wengert failed to timely pay subrogation claims and used settlement funds for other purposes, it is unclear from the stipulation whether Wengert had filed lawsuits on behalf of Kilbert and Edwards. Therefore, it is unclear whether Wengert's actions hampered the efficient operation of our court system.

Additionally, Wengert's loan of funds to a client violated rule 32:1.8(e), which prohibits an attorney from providing financial assistance to a client in connection with pending or contemplated litigation except in the case of a contingency fee or an indigent client.[3]

**D. Neglect of Client Matter (Count VIII).** In 2007, Wengert represented a client in a domestic relations appeal but failed to timely file the appellant's proof brief. Wengert was notified of the default, fined $50, and given fifteen days to cure the default. She ignored the default

---

[3]The stipulation is unclear regarding whether the advancement of $175 to Kilbert took place after July 1, 2005, the date on which the Iowa Rules of Professional Conduct replaced the Iowa Code of Professional Responsibility for Lawyers. Regardless, the previous rules also prohibited such conduct in DR 5–103(B), which stated that "a lawyer shall not advance or guarantee financial assistance to a client."

notice and the appeal was dismissed. Wengert's neglect of her client's matter violated rules 32:1.3 (attorney must act with reasonable diligence and promptness in representing client) and 32:8.4(d) (conduct prejudicial to the administration of justice). *See Carpenter*, 781 N.W.2d at 268–69 (stating that "[u]nder our rules prohibiting neglect, an attorney must advance and protect his clients' interests" and holding attorney neglect violated ethical rules, including rules 32:1.3 and 32:8.4(d)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668–69 (Iowa 2007) (holding an attorney's failure to comply with the appellate deadlines and disregard of the default notice in a client's appeal constituted a violation of rules 32:1.3 and 32:8.4(d)); *see also Templeton*, 784 N.W.2d at 768 (noting acts prejudicial to the administration of justice are those which " 'have hampered "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely" ' " or violate "the well-understood norms and conventions of the practice of law" (quoting *Howe*, 706 N.W.2d at 373)).

**E. Failure to Provide Competent Representation (Count IX).** Wengert and the board stipulated that in 2007, Wengert represented Christine Kilmer in a federal civil rights case, and the "drafting of the Complaint was poor." Wengert stipulated that by virtue of her poor work in this case she failed to provide competent representation in violation of rule 32:1.1 and also engaged in conduct prejudicial to the administration of justice under rule 32:8.4(d). Although there may be circumstances in which a single poorly drafted complaint could constitute an ethical violation, the stipulation does not provide enough factual detail for this court to find a violation of rules 32:1.1 and 32:8.4(d). The stipulation does not detail what, if any, harm to the client resulted or why the complaint was considered "poorly drafted."

**IV. Sanction.**

There is no standard sanction for a particular type of attorney misconduct, and we determine an appropriate sanction based on the particular circumstances of each case. *Carpenter*, 781 N.W.2d at 270. "In determining the appropriate sanction, we consider ' "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public." ' " *Marzen*, 779 N.W.2d at 767 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Iversen*, 723 N.W.2d 806, 810 (Iowa 2006)). We consider relevant aggravating and mitigating circumstances. *Id.*

Wengert violated ethical rules relating to conflicts of interest, disobeying a court order, mishandling client funds, and neglecting client matters.

Misappropriation of a client's funds by an attorney will typically result in license revocation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 634 (Iowa 2009). "Restitution or restoration of client funds prior to the discovery of their misappropriation does not preclude the imposition of revocation as a sanction." *Id.* This court will on occasion impose a lesser penalty when commingling of funds appears negligent, instead of intentional; the funds were not converted to the attorney's own use; no client suffered financial loss; or the attorney had a colorable future claim to the funds. *Id.*; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 339 (Iowa 2000). We have imposed license suspension of up to eighteen months when the violation involves poor office management and neglect. *See Carpenter*, 781 N.W.2d at 271.

Wengert used a client check meant for a medical examination for other expenses and a year later used her own funds to cover the cost of the medical examination. Wengert claims that although she commingled funds, she had a colorable claim to the check for other work in her representation of Meals and there is no stipulation to the contrary. Alone, this behavior, though serious, would not necessarily warrant a revocation.

Wengert also mishandled settlements received on behalf of clients. She failed to timely pay subrogation obligations for two clients—Kilbert and Edwards. She used the Kilbert settlement funds meant for the subrogation obligation for "other purposes." Wengert then used the Edwards settlement to pay the $9,790.29 Kilbert subrogation obligation. It is unclear from the stipulation whether Edwards eventually received the complete amounts due her from the settlement. The commission was concerned that Edwards did not receive her entire settlement and ordered Wengert to provide proof that the amount paid from the Edwards settlement to cover the Kilbert subrogation obligation had been repaid to Edwards.

Although the stipulation states "[i]t is not clear that any client suffered damage, however, and Respondent's conduct may have been negligent and sloppy rather than deliberate conversion of client funds," the commission's order suggests that a client *may* have been harmed by Wengert's poor management of funds. At the very least, it is clear that Wengert converted client funds for her own use. Wengert used the portion of the Kilbert settlement funds meant for the subrogation obligation for "other purposes." She later used the Edwards settlement funds to pay back the money taken from the Kilbert settlement. Such behavior has previously resulted in revocation. *See Iowa Supreme Ct.*

*Bd. of Prof'l Ethics & Conduct v. Leon,* 602 N.W.2d 336, 338–39 (Iowa 1999) (imposing sanction of revocation where attorney repeatedly neglected client legal matters and misappropriated other clients' funds in an effort to cover up the neglect). This is not a situation where Wengert had a colorable claim to funds but failed to follow the proper procedures for withdrawals. *See Plumb,* 766 N.W.2d at 634; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gottschalk,* 553 N.W.2d 322, 325 (Iowa 1996). Wengert's misappropriation of client funds, therefore, supports a sanction of revocation.

The stipulation identified aggravating and mitigating circumstances. As mitigating circumstances, the stipulation noted Wengert no longer wishes to practice law, Wengert planned to obtain a psychological evaluation because of depression but did not because of a lack of funds, and Wengert cooperated with the board. We agree with the commission that only Wengert's cooperation is a mitigating factor. *Iversen,* 723 N.W.2d at 811. Wengert's decision that she no longer wishes to practice has no bearing on her fitness. Additionally, Wengert received a continuance from the board and an order for a mental health examination, but she failed to follow through on the order. This does not demonstrate that Wengert suffers from any medical disorder such as depression, but instead demonstrates she was unable to follow through, a common problem in her prior legal practice.

As aggravating factors, the stipulation noted that Wengert committed multiple violations of the ethical rules. In addition to the misappropriation of client funds, Wengert disobeyed a court order, engaged in a representation that was a conflict of interest, and neglected a client matter. The large number and variety of Wengert's ethical violations is an aggravating factor. "Multiple violations of our

disciplinary rules such as occurred here call for enhanced disciplinary sanctions." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 288 (Iowa 1998).

Wengert was also previously admonished for making a recklessly false allegation in connection with the Stenlund matter. The prior admonishment occurred during the timeframe and related to a matter we are considering in this action, therefore, it does not require us to increase the severity of the sanction. *See Moorman*, 729 N.W.2d at 805–06 (noting the allegations pertained to the same time period for which Moorman had already been suspended for two years and therefore imposing a concurrent sanction of a public reprimand).

The parties recommended a license suspension of three years, and the commission agreed. We disagree and hold revocation is the appropriate sanction. The large number of serious ethical violations suggests a severe sanction is necessary. Additionally, Wengert misappropriated client settlement funds twice, once for "other purposes" and a second time to fulfill the obligation arising from her previous misappropriation.

Three cases present similar facts: *Iowa Supreme Court Attorney Disciplinary Board v. Earley*, 774 N.W.2d 301, 308–09 (Iowa 2009), *Leon*, 602 N.W.2d at 339, and *Harris*, 524 N.W.2d at 180. In *Earley*, this court concluded Earley's misappropriation of client settlement funds warranted license revocation. *Earley*, 774 N.W.2d at 308–09. Earley received settlement funds on behalf of a client but failed to pay the subrogation obligations and instead used that money for personal reasons. *Id.* at 306, 308. We revoked Earley's license, explaining that Earley did not assert a colorable claim to the settlement funds and "the misappropriation of client monies [is] intolerable." *Id.* at 309.

In *Harris*, the attorney withdrew a client's money from the trust account to apply toward attorney fees, even though the client had only agreed the money was to be used for the client's personal expenses, court costs, and expenses of litigation. *Harris*, 524 N.W.2d at 180. When the client objected, Harris paid the client $3,000 from the client trust account, even though the client only had $670 in the trust account. *Id.* We suspended Harris for three years. *Id.* at 181. We declined to revoke Harris's license because of a "good past professional record" and because Harris was "not charged with obtaining funds for himself beyond those fairly earned as fees." *Id.* In *Leon*, the attorney repeatedly covered up his neglect by paying clients from the client trust account even though those clients did not have funds in the trust account—therefore, paying with other clients' money. *Leon*, 602 N.W.2d at 337. We revoked Leon's license and noted the distinction from *Harris* was a likelihood of future misconduct because Leon had misappropriated funds on more than one occasion involving multiple clients, had lied to coverup his actions, and had failed to fully reimburse the trust account. *Id.* at 339.

Revocation is more appropriate here because, just as in *Earley*, Wengert failed to pay subrogation obligations and misappropriated settlement funds from Kilbert and Edwards. In addition, similar to *Leon*, Wengert attempted to cover up her actions by paying a client with another client's money and this behavior was part of a series of ethical violations. Wengert failed to keep an accounting of client funds, intermingled client and personal funds, disobeyed a court order, engaged in a representation that was a conflict of interest, and neglected a client matter leading to dismissal. Wengert's pattern of misconduct leads us to conclude that future misconduct is likely. Consistent with our prior decisions, we conclude revocation is the appropriate sanction.

## V. Conclusion.

Wengert's license to practice law in Iowa is revoked. Costs are taxed to Wengert pursuant to Iowa Court Rule 35.26(1).

**LICENSE REVOKED.**