# IN THE SUPREME COURT OF IOWA

No. 105 / 06-0695

Filed September 29, 2006

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

Appellee,

vs.

**JAMES WILLIAM McCARTHY,**

Appellant.

_____

On review of the report of the Grievance Commission.

Grievance Commission reports respondent has committed ethical misconduct and recommends suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Dan T. McGrevey, Fort Dodge, for appellant.

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellee.

**STREIT, Justice.**

James W. McCarthy has been admonished or reprimanded seven times for previous ethical violations. None of these previous ethical violations led to a suspension of his license to practice law. This trend ends today. The Iowa Supreme Court Attorney Disciplinary Board ("Board") accused McCarthy of improperly representing two clients with conflicting interests, neglecting client matters, and failing to respond to inquiries from the Board. The Grievance Commission of the Supreme Court of Iowa ("Commission") found McCarthy violated the Iowa Code of Professional Responsibility for Lawyers and recommended a one-year suspension. Due in part to mitigating factors, we suspend McCarthy's license for six months.

## I. Background

McCarthy was born on April 13, 1950. Since his early childhood, he has suffered from recurrent bouts of depression.

He was admitted to practice law in 1981. He began his legal career working for a law firm in Des Moines that specialized in collections. He then secured employment with the Child Support Recovery Unit in Des Moines and later transferred to Fort Dodge. In 1987, he went into private practice with another attorney. In 1991, he became a solo practitioner. McCarthy's principal areas of practice are family law, juvenile law, bankruptcy, and criminal law. At least half of his case load relates to court appointed cases.[1]

In the years since entering private practice, McCarthy has been punished numerous times for his ethical violations.

---

[1]McCarthy told the Commission he had approximately 330 open cases at the time he received this complaint.

In March 1991, the Board admonished McCarthy for failing to tell his client a motion for sanctions had been filed, that the court held a hearing on the matter, and that the court imposed sanctions.

In November 1992, he was reprimanded for failing to make timely filings in a probate matter and for failing to respond to the Board's three notices about its investigation.

In December 1993, the Board admonished McCarthy when he represented an individual even though he had previously represented the individual's former spouse. The representation of this individual was adverse to the interests of the former spouse and was in a matter that was substantially related to the matter in which McCarthy had represented the former spouse. McCarthy did not receive informed consent for this representation.

In February 1996, he was reprimanded for representing a client when such representation was adverse to the interests of a former client. McCarthy had previously represented a mother in her dissolution of marriage proceedings. These proceedings involved matters of child custody, child support, and visitation. Later, McCarthy represented the father to secure a modification of the dissolution decree. This modification sought primary care and custody of the children. McCarthy also represented the interests of those children in a child in need of assistance proceeding. These representations were contrary to the interests of the mother—McCarthy's previous client. By representing the father in matters contrary to the interests of his former client, McCarthy thereby violated his continuing duty of confidentiality to the mother.

In June 2000, the Board admonished McCarthy for failing to appear for a trial and for failing to appear for a hearing.

In October 2001, the Board admonished McCarthy for neglecting a client's matter when he failed to tell the client that he was not going to pursue the client's claim against a bank.

Finally, in November of 2003, he was reprimanded for failing to respond to three notices from the Board about a complaint.

On September 12, 2005, the Board filed the present complaint against McCarthy. The complaint consisted of five counts, each count representing a separate individual alleged to be harmed by McCarthy's alleged ethical violations. One of the counts was eventually dismissed by the Board.

After the present complaint was filed, McCarthy went to an intensive treatment center in Texas for help with his depression. He participated in this program for ten weeks.

On March 26, 2006, McCarthy appeared for the hearing on this complaint. He admitted the Board's allegations in all but one of the counts. McCarthy testified about his long history of major recurrent severe clinical depression, which he blames for his ethical problems. McCarthy's physician testified extensively about McCarthy's current medical condition. In relation to McCarthy's future, the physician stated:

> Well, I think it's gotten to the point where he reached the bottom of the barrel and had no way to go but up. And sometimes it takes a major disaster for people to realize they've got to change and they have to make changes now. And at least based on my last few sessions, I feel really good about how he's doing when he leaves the office.

McCarthy reports he has his depression under control for the first time in his life. He is on medication and sees a mental health professional regularly. He has made substantial changes in the operation of his private practice, including reducing his caseload and implementing better organizational tools. Additionally, McCarthy has a

network of judges and attorneys committed to supporting and assisting him.

The Commission concluded McCarthy violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers and recommended a one-year suspension.

## II. Standard of Review

We review attorney disciplinary proceedings de novo, *Iowa Supreme Ct. Attorney Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 229 (Iowa 2006), and review such proceedings pursuant to Iowa Court Rule 35.10. The Board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *D'Angelo*, 710 N.W.2d at 230. This burden is "less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case." *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)).

## III. Factual Findings

We find convincing evidence to prove the following:

## A. Traster Matter

McCarthy represented Christopher Traster in a dissolution of marriage action. His wife, Scotti Traster, was represented by the father and son combination of Charles and Justin Deppe. Scotti filed her petition for dissolution on January 28, 2002. During the pendency of the dissolution action, both Christopher and Scotti agreed that McCarthy would represent them in a joint petition for bankruptcy. The parties agreed to file the petition jointly even though they were in the midst of dissolution proceedings because it would be more economical for both of them—there would be only one filing fee for the joint bankruptcy

petition.[2]  The bankruptcy petition was filed on October 21, 2002, and the debts listed in the bankruptcy petition were discharged on February 12, 2003.

On April 17, 2003, the Trasters' dissolution of marriage decree was entered.  The parties had agreed upon all terms in the decree except for the payment of attorney fees.  In regards to the payment of attorney fees, the court ordered:

> That [Scotti] shall receive from [Christopher] the sum of $2000.00 for her attorney fees and expenses incurred herein, and that her Attorney Charles Deppe is hereby granted a judgment for said amount, to be due and payable from this date, with interest at the legal rate, until paid in full.

In response to this judgment, McCarthy sent Christopher a letter containing the following statements:

> In going over your bankruptcy petition, Charles Deppe was not added as a creditor on the petition, due to the fact that he hadn't submitted a bill yet.  I want to reopen the bankruptcy and include him as a creditor, so we can get rid of this legal bill. . . .  I will . . . reopen the matter *on your behalf only*, and include Mr. Deppe as an unsecured creditor.  (Emphasis added.)

On August 11, 2003, McCarthy filed a motion to reopen the bankruptcy so Christopher could discharge the court ordered attorney fee judgment.  As described in the above-mentioned letter, the motion did not list Scotti as a party to the petition and did not list Scotti as a party to the debt.

Scotti eventually learned the bankruptcy case had been reopened.  She contacted McCarthy and asked if she could also reopen the bankruptcy to include two recently discovered credit card debts that predated the original bankruptcy petition.  McCarthy told her to fax the

---

[2]Neither the Board nor the Commission discussed whether this represented a conflict of interest in and of itself.  Therefore we do not reach this issue.

information on the debts to his office. He told her to stop paying on the debts because they would be discharged upon reopening the bankruptcy. Scotti sent him a copy of the bills and stopped making payments on the credit cards.

At some point, Justin Deppe contacted Scotti and informed her she would still be liable for the legal bill if Christopher's liability for the $2000 was discharged through bankruptcy. Scotti then sent a letter to McCarthy telling him she did not approve of Christopher trying to discharge the $2000 debt to her dissolution attorney.

Charles Deppe challenged Christopher's attempt to discharge the $2000 debt and was ultimately successful, in part because McCarthy did not attend the hearing on the matter.

McCarthy never amended the bankruptcy petition to include Scotti's two additional credit cards because there was some dispute as to whether Scotti was to pay the required filing fee before McCarthy filed the information about the two credit cards.

Scotti filed an ethics complaint when her checking account was garnished for failure to pay one of the two credit cards. The Board sent McCarthy three notices regarding this complaint and he failed to respond to any of the notices.

### B. Schmitz Matter

McCarthy admits the following facts alleged by the Board. In May of 2003, McCarthy was appointed to represent L.A.C. in a child in need of assistance case. The Iowa Department of Human Services assigned Cheryl Schmitz to this case. Schmitz filed a complaint against McCarthy with the Board. McCarthy did not respond to either of the Board's notices about the complaint.

### C. Aguilera Matter

McCarthy admits the following facts alleged by the Board. On March 28, 2000, the Iowa District Court appointed McCarthy to represent Jose Aguilera with regard to an appeal of his postconviction relief case. On May 12, 2000, the clerk of the supreme court issued a notice of default and assessment of penalty to McCarthy because he failed to file and serve a combined certificate. On July 28, 2000, the clerk of the supreme court dismissed the Aguilera appeal for want of prosecution pursuant to Iowa Rule of Appellate Procedure 6.19(1). McCarthy also ignored two letters sent by Aguilera inquiring into his appeal. McCarthy failed to respond to two subsequent notices of complaint sent by the Board in regards to this matter.

### D. Kobel Matter

McCarthy admits the following facts alleged by the Board. On July 1, 2004, the Iowa District Court appointed McCarthy to represent Dawn Kobel with regard to an appeal of her conviction. On July 24, 2004, the clerk of the supreme court issued a notice of default and assessment of penalty to McCarthy because he failed to file and serve a combined certificate. On February 22, 2005, the clerk of the supreme court issued a notice of default and assessment of penalty to McCarthy because he failed to file Kobel's proof brief and failed to designate the appendix contents. On March 24, 2005, the clerk of the supreme court dismissed the Kobel appeal for want of prosecution. *See* Iowa R. App. P. 6.19(1).

### IV. Ethical Violations

Convincing evidence proves the following ethical violations:

### A. Representation of Two Clients with Differing Interests

The Board charged, and the Commission found, McCarthy's decision to reopen the Traster bankruptcy on Christopher's behalf so

that he could discharge Christopher's liability for Scotti's legal bills violated DR 5-105 (focusing on the threat posed to a lawyer's "exercise of independent professional judgment on behalf of a client" when two clients' differing interests come into play).

DR 5-105(C) provides:

> A lawyer shall not *continue* multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the representation of another client, except to the extent permitted under DR 5-105(D). (Emphasis added.)

DR 5-105(D) provides:

> [a] lawyer may represent multiple clients if it is obvious that the lawyer can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each.

However unwise it was for McCarthy to serve as Christopher Traster's attorney for the dissolution proceedings while simultaneously serving as both Scotti and Christopher's attorney for the purposes of a joint bankruptcy petition, that decision became acutely unethical when he decided to amend the bankruptcy petition *only* on Christopher's behalf. McCarthy's attempt to discharge Christopher's liability for a legal bill that Christopher was required to pay for his wife was clearly adverse to Scotti's interests. If Christopher's liability for the legal bill was discharged, then Scotti was still arguably liable for the bill because her liability had not been discharged and she was the one who had signed the original contract for legal services.

Both of the Trasters were McCarthy's clients for the original bankruptcy petition and the decision to amend the petition constituted the same matter as the original petition. An attorney cannot represent

two parties in a bankruptcy petition and then, six months after the bankruptcy discharge, use the knowledge and information discerned from both clients in the original action to amend the bankruptcy petition to the detriment of one of the original parties. We find such actions were violations of DR 5-105(C) and (D).

### B. Neglect

The record supports the Commission's finding that McCarthy committed professional neglect on numerous occasions. *See* DR 6-101(A)(3) (providing a lawyer shall not neglect a client's legal matter); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004) (defining professional neglect as "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client").

In the Aguilera and Kobel matters, appeals were dismissed as a result of McCarthy's neglect. *See Moorman*, 683 N.W.2d at 552-53 (holding attorney's failure to comply with rules of appellate procedure, as well as subsequent notices to cure the defaults issued by the clerk of court, reveals a blatant pattern of neglect and constitutes a "conscious disregard" for the responsibilities an attorney owes a client and the court). Such dilatory handling of client matters is a disservice to the client and the judicial system. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Kadenge*, 706 N.W.2d 403, 408-09 (Iowa 2005).

McCarthy's conduct in these matters violated DR 1-102(A)(1) (providing a lawyer shall not violate a disciplinary rule); DR 1-102(A)(5) (providing a lawyer shall not engage in conduct that is prejudicial to the administration of justice); DR 1-102(A)(6) (providing a lawyer shall not engage in any other conduct that adversely reflects on the fitness to

practice law); DR 6-101(A)(3) (providing a lawyer shall not neglect a client's legal matter); DR 7-101(A)(1) (providing a lawyer shall not intentionally fail to seek the lawful objectives of a client); DR 7-101(A)(2) (providing a lawyer shall not intentionally fail to carry out a contract of employment); DR 7-101(A)(3) (providing a lawyer shall not intentionally prejudice or damage a client during the course of the professional relationship); and DR 7-102(8) (providing a lawyer shall not knowingly engage in conduct contrary to a disciplinary rule in the representation of a client).

### C. Failure to Cooperate with the Board

McCarthy was dilatory in responding to the Board's notices of complaint in the Traster, Schmitz, Aguilera, and Kobel matters. While McCarthy filed an answer to the Board's complaint, his initial lack of cooperation wasted the Board's valuable time and limited resources. *See Kadenge*, 706 N.W.2d at 409. His lack of cooperation also prejudiced the Board's ability to gather all pertinent facts regarding the complaints. *Id.* Delay in responding to the Board is a violation of DR 1-102(A)(5), (6) (conduct prejudicial to administration of justice and conduct reflecting adversely on fitness to practice law). *See Comm. on Prof'l Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 857 (Iowa 1986) (holding failure to respond to grievance committee violates the proscription against conduct prejudicial to administration of justice).

### V. Sanction

When determining the proper sanction, we consider the nature of the alleged violations, the fitness of the attorney to continue to practice law, the need to protect the public from persons unfit to practice law, the need to uphold the public's confidence in the integrity of our system of justice, the need to deter other attorneys from committing similar

misconduct, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen,* 670 N.W.2d 161, 164 (Iowa 2003). The form and extent of a disciplinary sanction "must be tailored to the specific facts and circumstances of each individual case." *Comm. on Prof'l Ethics & Conduct v. Rogers,* 313 N.W.2d 535, 537 (Iowa 1981).

We understand depression is a serious illness and applaud McCarthy's continuing efforts to seek treatment. While his ongoing battle with depression may explain why he neglected clients and failed to cooperate with the Board, it does not excuse his unethical conduct. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson,* 595 N.W.2d 132, 136 (Iowa 1999) (attorney suspended for two months when ethical violations occurred during a period of depression and active alcoholism). In addition, we are not convinced depression played a factor in his poor decision to recommend that one of his clients amend a joint bankruptcy petition to the detriment of his other client.

These current violations illustrate that McCarthy has not learned from his previous reprimands and admonishments. In both 1993 and 1996 he was sanctioned for representing clients with interests adverse to those of former clients. Also, in 1992, 2000, 2001, and 2003 he was reprimanded for violations relating to neglect and/or failing to respond to inquiries from the Board. We therefore agree with the Commission that a suspension is warranted. Nonetheless, there are sufficient mitigating factors to justify a six-month suspension. For the first time in his life, McCarthy's depression appears to be under control and he has made great strides in treatment. Moreover, he has strong support from the bench and bar.

### VI. Conclusion

McCarthy is suspended indefinitely from the practice of law with no possibility of reinstatement for at least six months.  This suspension shall apply to all facets of the practice of law as provided in Iowa Court Rule 35.12(3) and requires notification of clients as outlined in Iowa Court Rule 35.21.  Upon any application for reinstatement, McCarthy must establish that he has not practiced law during the suspension period and he has in all ways complied with the requirements of Iowa Court Rule 35.13.  In his application for reinstatement, McCarthy must provide this court with an evaluation by a licensed health care professional verifying his fitness to practice law.  Before obtaining this evaluation, McCarthy shall submit the name of the proposed evaluator and the nature of the evaluation to the Board for its prior approval.  Costs are taxed to McCarthy pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**