# IN THE SUPREME COURT OF IOWA

No. 11–1868

Filed June 15, 2012

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

 Complainant,

vs.

**JAMES WILLIAM McCARTHY,**

 Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission recommends a two-year suspension of respondent's license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Dan T. McGrevey, Fort Dodge, for respondent.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board alleged the respondent, James W. McCarthy, violated the Iowa Rules of Professional Conduct in nine separate legal matters. A division of the Grievance Commission of the Supreme Court of Iowa filed a report finding McCarthy violated numerous rules and recommended that we indefinitely suspend the respondent's license to practice law in Iowa with no possibility of reinstatement for at least two years. Pursuant to our court rules, we are required to review the commission's report. *See* Iowa Ct. R. 35.10(1).[1] Upon our review, we agree the respondent violated our ethical rules and suspend his license to practice law indefinitely for at least two years.

**I. Prior Discipline.**

McCarthy is no stranger to the disciplinary process. In 1991, McCarthy was admonished because he failed to advise his client of the filing of a motion for sanctions, the hearing thereon, and the order imposing sanctions. In 1992, McCarthy received a public reprimand for failing to make timely filings in a probate matter and for failing to cooperate with the subsequent disciplinary investigation. In 1993, McCarthy received another admonishment after he represented a client in a proceeding substantially related and adverse to the interests of a former client without the informed consent of both parties. In 1996, McCarthy received a second public reprimand for again representing a client in a proceeding substantially related and adverse to the interests of a former client. In 2000, the Board admonished McCarthy after he failed

---

[1] In February 2012, we renumbered rules 35.9 through 35.27 because of the adoption of new Iowa Court Rule 35.9. However, we must refer to these rules in this case as previously numbered because McCarthy's hearing before the grievance commission commenced prior to the renumbering. *See Iowa Supreme Ct. Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 542 n.1 (Iowa 2012).

to appear for a trial and a hearing. The Board admonished McCarthy in 2001 for the fourth time after he neglected a client's matter by failing to tell his client that he would not pursue the client's claim. Next, in 2003, we publicly reprimanded McCarthy for failing to cooperate with a Board investigation.

In 2006, we suspended McCarthy's license for six months for his conduct in multiple matters. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 722 N.W.2d 199, 200 (Iowa 2006). In one matter, McCarthy represented a husband and wife in a bankruptcy proceeding. *Id.* at 202. He also represented the husband in a separate dissolution of marriage proceeding. *Id.* Six months after the bankruptcy discharge, McCarthy used knowledge he acquired during his representation of both parties to amend the bankruptcy petition to the detriment of the wife. *Id.* at 202–03. He also neglected client matters, which resulted in two dismissed appeals. *Id.* at 203. Further, he failed to answer the Board's complaint in four matters. *Id.* at 205.

Since that time, we have temporarily suspended McCarthy's license on four occasions for failing to respond to notices from the Board. Finally, in 2009, we publicly reprimanded McCarthy for the fourth time after he represented both parties in a dissolution of marriage proceeding and neglected that representation.

## II. Grievance Commission Proceedings in the Current Matter.

The Board's original complaint contained seven counts alleging McCarthy violated numerous disciplinary rules. The Board later amended the complaint by adding two more counts alleging further violations. The Board and McCarthy entered into a joint stipulation admitting all of the factual allegations of the complaint and agreeing to the admission of exhibits supporting the allegations. The stipulation also

admitted rule violations in each count, listed McCarthy's extensive history of prior discipline as an aggravating factor, and noted his heart disease and open-heart surgery in April 2008 were mitigating factors. Finally, the stipulation waived a hearing on the complaint and requested that the commission recommend a sixty-day suspension of McCarthy's license.

The commission filed a report adopting the stipulation of facts. The report set out more than fifty violations of the Iowa Rules of Professional Conduct and seven violations of our court rules, all of which were admitted in the joint stipulation. The commission recommended we suspend McCarthy's license to practice law indefinitely with no possibility of reinstatement for at least two years.

### III. Scope of Review.

We review lawyer disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 809 N.W.2d 543, 545 (Iowa 2012). The Board must prove disciplinary violations by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 763 (Iowa 2010). A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *Id.* Although we give the commission's recommendations respectful consideration, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 304 (Iowa 2009). Upon proof of misconduct, we may impose a greater or lesser sanction than that recommended by the commission. *Id.*

When the parties enter into a stipulation of facts, it is binding on them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010). In our attempt "to give effect to the parties' intentions"

we interpret a factual stipulation " 'with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved.' " *Id.* at 803–04 (quoting *Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983)). However, a stipulation is not binding as to a violation or a sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 528 (Iowa 2011); *Gailey*, 790 N.W.2d at 804. We will determine whether a violation occurred and the appropriate sanction based upon the facts we find from the stipulation and our review of the record.

### IV. Findings of Fact.

Based on the parties' stipulation and our review of the record, we make the following findings of fact.

**A. Meiners Matter.** In March 2008, Gary Meiners hired McCarthy to bring a contempt action against his ex-wife and modify a dissolution decree. Meiners paid McCarthy a $1500 retainer. The stipulation does not indicate whether McCarthy deposited the retainer into a client trust account. Meiners also signed a verification on a petition to modify a dissolution decree. McCarthy did not file the petition at this time.

On April 10, McCarthy suffered a heart attack. He underwent open-heart surgery ten days later. In June, McCarthy informed Meiners he was ready and able to proceed with his case. However, McCarthy did not take any action on Meiners' case until September 30, when he filed an application for a rule to show cause alleging Meiners' ex-wife failed to pay uncovered medical expenses for their children. That day, the district court filed a rule to show cause and set a hearing for October 20. The order required Meiners' ex-wife to be personally served with a copy of the

order no less than ten days prior to the hearing date. On the day of the hearing, McCarthy filed a motion to continue the hearing because Meiners' ex-wife was not timely served and because McCarthy had a scheduling conflict involving a hearing in another county. McCarthy, Meiners, and Meiners' ex-wife did not appear for the hearing, and the district court dismissed the application without prejudice.

On October 31, McCarthy filed Meiners' petition and an amendment to that petition. McCarthy also filed Meiners' second application for a rule to show cause. The district court later combined the two actions and set a date for trial.

Twice during McCarthy's representation of Meiners, McCarthy failed to attend appointments with Meiners that McCarthy had scheduled. McCarthy also failed to keep Meiners informed as to the status of his case. Meiners terminated the representation in November. In December, Meiners requested a final billing statement and a refund of the remainder of the retainer. McCarthy prepared a billing statement amounting to all but $33.48 of Meiners' retainer. He refunded the remainder to Meiners. At no time prior to this point did McCarthy provide Meiners with any documentation relating to fees or expenses. Further, McCarthy did not withdraw his appearance until April 15, 2009.

After Meiners filed a complaint with the Board, McCarthy failed to respond to multiple notices from the Board regarding the matter. On May 14, we suspended his license temporarily for failing to respond to the Board's notice. McCarthy responded the next day, and we reinstated his license on May 18.

**B. Ricklefs Matter.** In January 2008, McCarthy agreed to represent Roberta Ricklefs in an action for dissolution of marriage. Ricklefs paid McCarthy a $1500 retainer, but the stipulation does not

indicate whether McCarthy deposited the funds into a client trust account. McCarthy informed Ricklefs he would ask the district court to award her temporary alimony. Ricklefs attempted to contact McCarthy on multiple occasions in February, but was unable to reach him. Ricklefs signed the petition for dissolution of marriage on March 15. At that time, McCarthy told Ricklefs he would also seek an order demanding her husband pay roughly $600 of her medical expenses.

On April 3, McCarthy told Ricklefs he had not taken any action on the dissolution of her marriage, temporary alimony, or medical bill. Following his open-heart surgery, McCarthy told Ricklefs he would be back at work by the middle of May.

On May 21, Ricklefs was served with her husband's petition for dissolution of marriage. Ricklefs was surprised because she thought McCarthy had already filed her dissolution petition when, in fact, he had not. On May 28, Ricklefs terminated McCarthy's representation, asked him to return her retainer, and asked him to send her file to her new attorney. The next day, McCarthy filed an answer on Ricklefs' behalf.

During the course of the representation, Ricklefs sent several letters to McCarthy by certified mail. Because McCarthy never claimed them, the post office returned them to Ricklefs. McCarthy never filed a motion to withdraw and, as of March 14, 2009, had not sent Ricklefs a bill or returned any of her retainer. He also never provided Ricklefs with any documentation relating to fees or expenses.

On July 17, the Board asked McCarthy to provide copies of his client trust account documents relating to Ricklefs' advance fee. McCarthy did not reply to the Board's request.

**C. Omvig Matter.** In July 2008, McCarthy agreed to represent Michael Omvig in a criminal case and dissolution of marriage. On

July 11, Omvig paid McCarthy a $2200 retainer. The stipulation does not indicate whether McCarthy deposited the funds into a client trust account. Omvig died the next day.

Omvig's mother then asked McCarthy to contact the county attorney's office and obtain as much information as he could about her son's death, including coroner and police reports. McCarthy spoke with the county attorney about obtaining these documents, but the county attorney never produced them.

On October 12, Omvig's mother asked McCarthy to refund the retainer. McCarthy agreed that he should return the unused portion of the retainer, but was uncertain as to how to return it due to Omvig's death. Believing he should return the fee to Omvig's estate, he asked Omvig's mother whether an estate would be opened. Omvig's mother said she would look into this.

In mid-2009, Omvig's mother filed a complaint against McCarthy with the Board. After multiple notices from the Board and a notice of possible temporary suspension, McCarthy finally responded. He also prepared a billing statement for $975 in services provided to Omvig, which included fees relating to his conversations with Omvig's mother and the county attorney after Omvig's death. McCarthy wrote a check on his personal bank account to Omvig's mother for the unused portion of the retainer. At no time prior to the billing statement did McCarthy provide any documentation to Omvig or his mother about fees or expenses.

**D. L.G. Matter.** McCarthy represented L.G., a minor, in early 2009. On February 19, McCarthy filed a notice of appeal on behalf of L.G. with the Iowa Supreme Court. McCarthy did not file a notice of appeal in the district court as required by our rules. In an order, we

directed L.G. to file a statement within fourteen days as to whether we had jurisdiction over the appeal. McCarthy did not file such a statement on his client's behalf. On April 23, we granted L.G. a delayed appeal and ordered him to file his combined certificate within seven days. On May 27, the deputy clerk of the supreme court issued McCarthy a notice of default and assessment of penalty because he had failed to timely serve and file a combined certificate. After McCarthy failed to comply, we dismissed L.G.'s case pursuant to our court rules and forwarded the dismissal order to the Board. In January and February 2010, McCarthy received repeated notices from the Board and a notice of possible temporary suspension for failure to respond to the Board. McCarthy responded in early March.

**E. Fawcett Matter.** On January 7, 2009, McCarthy filed a notice of appeal with the district court on behalf of Ryan Fawcett in a civil proceeding. On April 14, the deputy clerk of the supreme court issued a notice of default and assessment of penalty to McCarthy because he failed to timely file his proof brief and pay the filing fee. When McCarthy failed to remedy these deficiencies, we dismissed the appeal pursuant to our court rules. In January and February 2010, McCarthy received repeated notices from the Board and a notice of possible temporary suspension for failure to respond to the Board. He responded in March.

**F. Sandahl Matter.** Amanda Sandahl retained McCarthy in December 2009 to represent her in two criminal cases. McCarthy filed Sandahl's written arraignment and plea of not guilty in one case on December 14. The district court scheduled a pretrial conference for January 27, 2010. Although McCarthy had notice of this conference, he and Sandahl failed to appear, resulting in the issuance of a bench

warrant for Sandahl's arrest. McCarthy filed Sandahl's guilty plea in the second case on February 19.

On April 14, police arrested Sandahl. The district court set a hearing for April 29. Again, McCarthy knew about the hearing, but failed to appear. The court relieved McCarthy from further representation of Sandahl, appointed her new counsel, and forwarded a copy of the court files and hearing transcript to the Board. Between May 11 and September 24, McCarthy received multiple notices from the Board regarding his representation of Sandahl and a notice of possible suspension for failure to respond. McCarthy responded on September 27.

**G. Mackerman Matter.** Candas Mackerman hired McCarthy on August 18, 2009, to represent her in establishing a guardianship for her son. She paid McCarthy a $750 retainer, but the stipulation does not indicate where McCarthy deposited these funds. Mackerman had difficulty getting in contact with McCarthy. When she finally reached him, McCarthy informed her that he had to publish notice in the newspaper to inform her son's father of the action. McCarthy also said he would send her the guardianship papers. McCarthy failed to publish the notice and send Mackerman the guardianship papers.

Although McCarthy never filed the guardianship petition, he told Mackerman to meet him at the courthouse for a guardianship hearing on four separate occasions. Mackerman and her son appeared at the courthouse all four times, but McCarthy was never present. Each time, the court informed Mackerman and her son that no such guardianship action was on its schedule.

Mackerman filed a complaint with the Board. McCarthy was served with a notice from the Board on November 29, 2010, but never responded.

**H. Ainsworth Matter.** In early March 2011, McCarthy agreed to send a demand letter on behalf of Leslie Ainsworth to a buyer regarding a breach of sales contract. Ainsworth asked McCarthy to send a draft of the letter for Ainsworth's review and approval. Shortly thereafter, Ainsworth left numerous telephone and e-mail messages with McCarthy, but McCarthy did not respond. On March 25, Ainsworth received a copy of McCarthy's letter and a proposed supplementary sales agreement. However, McCarthy never informed Ainsworth whether he sent the letter or proposed agreement to the buyer. Ainsworth hired a different attorney to pursue the matter. Ainsworth paid McCarthy approximately $95 for the preparation of the letter, but the stipulation does not indicate when Ainsworth paid McCarthy the funds.

**I. Lee Matter.** In January 2011, Melissa Lee hired McCarthy to represent her in a custody modification action involving her two children. Lee paid McCarthy a $1300 retainer. McCarthy prepared a petition, which Lee signed on January 11. Later that day, Lee called McCarthy and informed him that the petition contained two errors. McCarthy told Lee not to return to the office, that he would make the corrections, and that he would send the revised petition to her. The revised petition contains a signature somewhat similar to Lee's on the original version, but McCarthy admitted in the stipulation that Lee never received or signed the revised petition. Nonetheless, McCarthy notarized the revised petition.

On January 20, McCarthy filed Lee's petition. The next day, McCarthy told Lee he would let her know when the sheriff served her ex-

husband. McCarthy also told Lee the court would hold a hearing before school started for the 2011–2012 school year.

After Lee unsuccessfully attempted to contact McCarthy, she learned from the sheriff's office on February 4 that the sheriff had served her ex-husband on January 25. On February 9, Lee's ex-husband filed an answer, counterclaim, and contempt application. He later served McCarthy with interrogatories. On March 11, McCarthy filed a reply to Lee's counterclaim. Lee and McCarthy met on March 21 to complete Lee's answers to the interrogatories. That day, he told Lee the court had not set a hearing date yet. McCarthy did not serve Lee's answers to the interrogatories.

On March 29, Lee called McCarthy and asked him whether his license to practice law was under review. McCarthy told her he could not speak with her at that time and would return her call. During the next three days, Lee left McCarthy telephone messages asking McCarthy to call her. On April 2, McCarthy told Lee that he had been too busy to return her calls, that he would have a disciplinary hearing in May, and that she needed to find another attorney because of his disciplinary investigation. He also falsely told Lee the court scheduled her hearing for July 28.

On April 7, Lee's ex-husband filed a motion to compel Lee to file answers to the interrogatories. On April 8, Lee met with a new attorney, who agreed to take her case. Lee's new attorney informed Lee about the motion to compel and that the court scheduled a hearing in November. Later that day, Lee asked McCarthy for her file, about her interrogatory answers, and for the remainder of her retainer. McCarthy told Lee he would deliver her file, which contained her answers to the interrogatories, to her new attorney. He also told Lee he would prepare

and send her an itemized billing statement and deliver the remainder of the retainer to the new attorney. McCarthy withdrew from the representation.

McCarthy did not deliver Lee's file to the new attorney until April 28. He also delivered a billing statement and a $214.30 refund. On July 21, McCarthy prepared a revised billing statement that indicated he erroneously refunded part of Lee's retainer and that she owed him $676.50.

## V. Ethical violations.

**A. Neglect.** The Board alleges McCarthy violated four of our rules pertaining to neglect. Neglect involves "a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss,* 786 N.W.2d 860, 867 (Iowa 2010) (citation and internal quotation marks omitted).

1. *Diligence.* Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. Under this rule and its predecessor, a lawyer commits an ethical violation when he repeatedly fails to meet deadlines and perform the functions required of him as an attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel,* 809 N.W.2d 96, 102 (Iowa 2012); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold,* 642 N.W.2d 288, 293 (Iowa 2002).

In the Meiners matter, McCarthy waited six months to take any action on his client's behalf and seven months to file the petition his client had signed. McCarthy did not file his clients' petitions in the Ricklefs and Mackerman matters even though he indicated he would do so shortly or had already done so. Similarly, he failed to file Lee's

interrogatory answers. In the L.G. and Fawcett matters, McCarthy failed to comply with an order and notices directing him to cure deficient filings. Finally, during his representation of Sandahl, McCarthy failed to appear at a pretrial conference and a hearing. Therefore, we find McCarthy violated rule 32:1.3.

2. *Communication with clients.* The next two implicated rules relate to McCarthy's duty to communicate with his clients. Rule 32:1.4(a)(3) requires a lawyer to keep his or her "client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). Further, rule 32:1.4(a)(4) requires a lawyer to "promptly comply with reasonable requests for information." *Id.* r. 32:1.4(a)(4). Nearly all of McCarthy's clients reported hardship in contacting McCarthy due to McCarthy's failure to answer his telephone and respond to telephone and e-mail messages. This conduct might have been enough on its own to find an ethical violation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 680 (Iowa 2010) (finding a lawyer failed to keep his client reasonably informed when he failed to return his client's telephone calls). Additionally, however, McCarthy failed to attend appointments he had scheduled with Meiners. McCarthy also falsely told Mackerman the court had scheduled a hearing on four different days, which caused Mackerman to appear at the courthouse only to discover that McCarthy was not present and no hearing was scheduled. Finally, it seems McCarthy disappeared entirely during his representation of Ainsworth after sending a draft of the proposed supplemental sales agreement. Consequently, McCarthy violated rules 32:1.4(a)(3) and 32:1.4(a)(4).

3. *Duty to expedite litigation.* Rule 32:3.2 imposes a duty on a lawyer to "make reasonable efforts to expedite litigation consistent with

the interests of the client." Iowa R. Prof'l Conduct 32:3.2. During his representations of Meiners, L.G., and Fawcett, McCarthy failed to appear in court or failed to timely remedy a deficient filing, which led to the dismissal of the three of the actions he was pursuing on behalf of his clients. McCarthy also failed to appear with his client at a pretrial conference in the Sandahl matter, which lead to the issuance of a bench warrant for the arrest of his client. Finally, during his representation of Lee, McCarthy failed to timely serve his client's interrogatory answers. Therefore, we find McCarthy violated rule 32:3.2.

**B. Failure to Communicate Fees.** The Board alleged McCarthy violated rule 32:1.5(b), which governs fee agreements. The rule requires a lawyer to communicate to the client, preferably in writing, "the basis or rate of the fee and expenses for which the client will be responsible . . . before or within a reasonable time after commencing the representation." Iowa R. Prof'l Conduct 32:1.5(b). A billing statement following the rendering of the lawyer's services is not sufficient by itself to comply with the rule, even if it sets out the lawyer's hourly rate and time spent working on a client's matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 619 (Iowa 2012). McCarthy merely prepared final billing statements in the Meiners, Ricklefs, Omvig, and Lee matters. Therefore, we find McCarthy violated rule 32:1.5(b) because he failed to communicate the fee and expense rate for which his clients were responsible within a reasonable time of commencing the representation.

**C. Trust Account Violations.** The Board alleged McCarthy violated multiple provisions of rule 32:1.15, which governs the safeguarding of a client's property. This includes retainer fees. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 631–32 (Iowa 2009). The rule provides, in relevant part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.

. . . .

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

. . . .

(f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

*Id.* r. 32:1.15. Rule 32:1.15 incorporates Iowa Court Rule 45.7, which directs a lawyer as to how to handle a retainer. The rule requires a lawyer to deposit a retainer into a trust account and withdraw payments as the lawyer earns the fee or incurs the expense. Iowa Ct. R. 45.7(3). The rule also requires a lawyer, at the time of a withdrawal of a fee or expense, to notify his client in writing of the time, amount, and purpose of the withdrawal and provide a complete accounting. *Id.* r. 45.7(4).

In the Meiners, Ricklefs, and Mackerman matters, McCarthy received retainer fees from his clients, but the stipulation is unclear whether he deposited the funds into a client trust account. Therefore, the Board has failed to prove by clear and convincing evidence that

McCarthy failed to deposit these funds into a client trust account. However, in the Omvig matter, McCarthy refunded the unearned portion of the retainer via a check written on his personal account. The fact that McCarthy placed unearned fees into his personal account confirms he commingled unearned client funds with his own property in violation of rules 32:1.15(a) and (c).

Moreover, a lawyer violates the provision requiring the lawyer to promptly return unearned fees if the lawyer takes "several months" to return the unearned fees. *Plumb*, 766 N.W.2d at 632; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 439 (Iowa 2012) (holding a four-month delay violated rule 32:1.15(d)). Additionally, when a representation ends, a lawyer must "take steps to the extent reasonably practicable to protect a client's interests." Iowa R. Prof'l Conduct 32:1.16(d). This may include "surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred." *Id.* Ricklefs discharged McCarthy on May 28, 2008. She also asked McCarthy to refund her $1500 retainer. As of April 14, 2009, McCarthy had not sent Ricklefs a bill or returned any of her retainer. Therefore, we find McCarthy violated rules 32:1.15(d) and 32:1.16(d).

Finally, McCarthy admitted he did not provide a contemporaneous written notice to his client of the time, amount, and purpose of his fee and expense withdrawals from his client trust account in the Meiners, Ricklefs, and Omvig matters. Consequently, McCarthy violated Iowa Court Rule 45.7(4) and Iowa Rule of Professional Conduct 32:1.15(f).

**D. Improper Withdrawal from Representation.** The Board alleged McCarthy violated rule 32:1.16, which governs a lawyer's withdrawal from a representation. The Board alleges McCarthy should

have withdrawn from his representation of Ricklefs and Meiners after he suffered a heart attack. It also alleges McCarthy should have withdrawn from the Meiners action after Meiners discharged him. Finally, the Board alleges Meiners did not take steps to protect his clients' interests following his withdrawal in the Ricklefs and Meiners actions.

1. *Mandatory withdrawal because of physical condition.* Rule 32:1.16(a)(2) provides that a lawyer must withdraw from a representation where "the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client." *Id.* r. 32:1.16(a)(2). As we recently noted in *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham,* 812 N.W.2d 541, 548 (Iowa 2012), there is very little case law interpreting this rule or its predecessor. To prove McCarthy violated the rule in the Meiners or Ricklefs matters, the Board would have to demonstrate that McCarthy's heart attack and subsequent open-heart surgery materially impaired his representation of Meiners or Ricklefs. We have found a lawyer's physical condition materially impaired the representation of a client where the lawyer allowed three appeals to be dismissed for want of prosecution while the lawyer underwent three surgeries to correct a chronic back ailment. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan,* 781 N.W.2d 279, 283–84 (Iowa 2010).

McCarthy suffered his heart attack on April 10, 2008, and underwent open-heart surgery on April 20. On April 25, McCarthy communicated with Ricklefs via telephone, and McCarthy told her he would be back to work by the middle of May. On May 21, Ricklefs received her husband's petition for dissolution of marriage, which surprised her because she had signed her own petition on March 15. We cannot find that McCarthy should have withdrawn from his representation of Ricklefs for two reasons. First, the Board has not

established by a convincing preponderance of the evidence that McCarthy's failure to file Ricklefs' divorce petition prior to the time her husband filed his petition put Ricklefs at any kind of a disadvantage, let alone a material disadvantage, in her case. Second, given McCarthy's habitual neglect of client matters, the Board has failed to establish that McCarthy's heart attack and subsequent surgery, and not his dilatory nature, caused him not to file Ricklefs' petition prior to the time her husband filed his petition. It is possible McCarthy would have failed to file Ricklefs' petition prior to May 21 even if he did not have a heart attack.

Similarly, McCarthy met with Meiners in June, at which point McCarthy informed Meiners he was ready and able to proceed with his case. Although McCarthy did not take any action on Meiners' case until September 30, there is no indication that the delay negatively affected Meiners' case.

Therefore, the Board has failed to prove by a convincing preponderance of the evidence that McCarthy's heart attack and subsequent surgery materially impaired his representation of Ricklefs or Meiners. Thus, McCarthy did not violate rule 32:1.16(a)(2).

2. *Mandatory withdrawal because of discharge by client.* Rule 32:1.16(a)(3) requires a lawyer to withdraw if discharged by his or her client. Iowa R. Prof'l Conduct 32:1.16(a)(3). In interpreting the rule's predecessor, DR 2–110(B)(4), we held a lawyer must withdraw from the case when discharged by the client. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Freeman*, 603 N.W.2d 600, 602 (Iowa 1999). Meiners discharged McCarthy in November, but McCarthy failed to withdraw his appearance until April 15, 2009. Therefore, we find McCarthy violated rule 32:1.16(a)(3).

**E. Dishonest Conduct.** Rule 32:8.4(c) prohibits a lawyer from engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). The Board alleged McCarthy violated this rule during his representations of Mackerman and Lee.

We will not find a lawyer's actions violated rule 32:8.4(c) absent some level of scienter. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011). A lawyer's negligence is not enough by itself to establish a violation. *Id.* However, we will find a violation of this rule where a lawyer forges a client's signature on court documents. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Liles*, 808 N.W.2d 203, 206 (Iowa 2012); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rylaarsdam*, 636 N.W.2d 90, 92–93 (Iowa 2001).

In the Mackerman matter, McCarthy told his client he could not establish a guardianship for her son without first publishing notice to the son's father. McCarthy never published such notice. We are unable to determine from the record presented whether McCarthy made a knowing misrepresentation of a material fact to Mackerman when he told her he would establish a guardianship or publish notice. Nonetheless, we may infer McCarthy's knowledge from the circumstances surrounding the misrepresentation. *See* Iowa R. Prof'l Conduct 32:1.0(f). McCarthy represented on numerous occasions that he filed the guardianship papers because he told Mackerman the court had scheduled a guardianship hearing on those occasions. These multiple misrepresentations lead us to find that McCarthy knowingly made these representations and that they were not a product of his neglect.

In the Lee matter, McCarthy stipulated his client never received or signed the petition he notarized and filed. Although the stipulation does

not indicate who forged Lee's signature on the petition, it does indicate McCarthy knew he filed a court document containing a forged signature. Therefore, we find McCarthy violated rule 32:8.4(c) in both matters.

**F.  Failure to Cooperate with Board.**  The Board alleges McCarthy failed to cooperate with the Board in multiple counts.  Rule 32:8.1(b) provides that "a lawyer in connection with . . . a disciplinary matter, shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority."  Iowa R. Prof'l Conduct 32:8.1(b).  It is well established that a respondent's failure to respond to a notice of complaint from the Board is a violation of our rules.  *Johnson*, 792 N.W.2d at 680; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 331 (Iowa 2009); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken,* 688 N.W.2d 812, 821 (Iowa 2004); *see also*  Iowa Ct. R. 34.6(4).  When a respondent fails to respond, we may infer from the circumstances that the respondent knowingly failed to respond.  Iowa R. Prof'l Conduct 32:1.0(f).

McCarthy has repeatedly demonstrated his unwillingness to cooperate with the Board's investigations.  He failed to respond to notices from the Board in the Meiners, Ricklefs, Omvig, L.G., Fawcett, Sandahl, and Mackerman matters.  Further, we suspended his license temporarily as the result of his failure to comply with the Board in one matter. Therefore, we find McCarthy violated rule 32:8.1(b).

**G.  Conduct Prejudicial to the Administration of Justice.**  Rule 32:8.4(d) prohibits a lawyer from engaging "in conduct that is prejudicial to the administration of justice."  *Id.* r. 32:8.4(d).  A lawyer violates this rule when the lawyer fails to respond to inquiries from the Board.  *Plumb*, 766 N.W.2d at 631–32; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008); *McCarthy*, 722 N.W.2d at 205; *Comm.*

*on Prof'l Ethics & Conduct v. Bromwell*, 389 N.W.2d 854, 857 (Iowa 1986). Because we have found McCarthy failed to cooperate with the Board, we also find he engaged in conduct prejudicial to the administration of justice in multiple matters.

**VI. Sanction.**

To determine the appropriate sanction, we consider the nature of the violations, the attorney's fitness to continue to practice law, the need to protect the public from those unfit to practice law, the need to uphold public confidence in our judicial system, deterrence, maintenance of the reputation of the bar as a whole, aggravating circumstances, and mitigating circumstances. *Ireland*, 748 N.W.2d at 502. Moreover, we tailor the sanction to the facts and circumstances of each case. *Comm. on Prof'l Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981).

In summary, McCarthy neglected the matters of multiple clients, made misrepresentations to his clients about the status of their cases to cover up his neglect, filed a court document containing a forged signature, failed to appear at court proceedings, and failed to comply with orders directing him to cure deficiencies. He also failed to communicate the fee or expense rate for which his clients were responsible in multiple matters, failed to provide notices to his clients about fee and expense withdrawals, commingled client funds with his own property, failed to promptly return unearned fees, failed to withdraw after a client discharged him, and failed to respond to the Board's inquiries.

Neglect alone usually results in a sanction ranging from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 401 (Iowa 2005). However, when a lawyer's other misconduct compounds neglect, we may impose a

more severe sanction.  *Id.*  We have suspended a lawyer's license for up to three years for conduct similar to McCarthy's.  *See, e.g., Johnson,* 792 N.W.2d at 682–83 (imposing a three-year suspension where the lawyer's misconduct included neglect, failure to communicate with clients, failure to return unearned fees, and failure to respond to the Board's inquiries); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann,* 712 N.W.2d 89, 96–98 (Iowa 2006) (suspending a lawyer's license for two years for neglect, conversion of client funds, misrepresentations to cover up neglect, failure to withdraw when discharged, failure to deliver client funds when requested, failure to respond to the Board, and other violations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Maxwell,* 705 N.W.2d 477, 479–81 (Iowa 2005) (imposing a one-year suspension for neglect and failure to notify a client of a hearing where the lawyer also had a record of disciplinary actions involving neglect); *Honken,* 688 N.W.2d at 820, 822 (suspending a lawyer's license for two years for "multiple acts of making misrepresentations to the court, disregarding court orders, neglecting client matters, misrepresenting the status of matters to . . . clients, and failing to respond to the Board's inquiries"); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman,* 683 N.W.2d 549, 553–54 (Iowa 2004) (imposing a two-year suspension where neglect included failure to timely file a petition, failure to comply with rules of appellate procedure, and failure to comply with notices of deficient filings).

A personal health issue can mitigate the sanction we impose on a lawyer for ethical violations, but they do not excuse misconduct.  *Knopf,* 793 N.W.2d at 531; *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis,* 749 N.W.2d 694, 703 (Iowa 2008) (finding depression to be a mitigating factor in a discipline action resulting in a one-year suspension for neglect, client trust account violations, and dishonesty to client);

*McCann*, 712 N.W.2d at 96 (finding severe depression and anxiety constituted mitigating factors in a disciplinary action resulting in a two-year suspension for neglect, misrepresentation, and client trust account violations). We find McCarthy's heart disease and subsequent open-heart surgery a mitigating factor.

On the other hand, McCarthy's detailed history of prior disciplinary violations is an aggravating factor. Since 1991, McCarthy has been admonished four times and publicly reprimanded four times. Further, we have temporarily suspended his license on four occasions for failure to respond to the Board's inquiries and suspended his license for six months on another occasion. Much of McCarthy's prior discipline stems from his neglect of client matters, which is misconduct he also engaged in here.

McCarthy has established a troubling pattern of neglect, a blatant disregard for his clients, and a lack of respect for the disciplinary process. In light of his numerous violations of our rules, his health problems, and his disciplinary history, we suspend McCarthy's license to practice law indefinitely with no possibility of reinstatement for two years.

### VII. Disposition.

We suspend McCarthy's license to practice law in this state indefinitely with no possibility of reinstatement for two years. This suspension applies to all facets of the practice of law as provided in rule 35.12(3) and requires notification of clients as outlined in rule 35.22(1). McCarthy must also refund all unearned fees advanced to him by clients and pay all penalties assessed for failure to comply with appellate rules. Upon application for reinstatement, McCarthy must demonstrate that he has not practiced law during the period of his suspension and that he

has complied with the requirements of rule 35.13. We tax the costs of this proceeding to McCarthy pursuant to rule 35.26(1).

**LICENSE SUSPENDED.**